UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

CHARLES E. RILEY                          :
                                          :
        v.                                :        C.A. No. 10-445S
                                          :
MICHAEL J. ASTRUE                         :
Commissioner of the Social Security       :
Administration                            :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on October 29, 2010 seeking to reverse the decision of the Commissioner.   On May 27, 2011, Plaintiff filed a Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision.  (Document No. 8).  On July 28, 2011, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent legal research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 10) be DENIED and that Plaintiff's Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be GRANTED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 5, 2008 alleging disability since December 4, 2007. (Tr. 109-119). The applications were denied initially on July 31, 2008 (Tr. 58-63) and on reconsideration on December 12, 2008. (Tr. 65-70). Plaintiff requested an administrative hearing. (Tr. 72). On April 6, 2010, Administrative Law Judge Gerald Resnick (the "ALJ") held a hearing at which Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 24-52). The ALJ issued a decision unfavorable to Plaintiff on May 19, 2010. (Tr. 4-18). The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that substantial evidence does not support the ALJ's Step 2 conclusion that Plaintiff's mental illness was not a severe impairment. Also, Plaintiff contends that substantial evidence does not support the ALJ's finding as to the functional impact of Plaintiff's obesity on his ability to work.

The Commissioner disputes Plaintiff's claims and argues that the ALJ properly found at Step 2 that Plaintiff did not have a severe mental impairment and properly assessed the functional impact of Plaintiff's obesity in assessing a residual functional capacity.

### III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.     THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record.     Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was fifty-four years old on the date of the ALJ's decision. (Tr. 116). Plaintiff graduated high school and worked in the relevant past as a loan officer/mortgage originator. (Tr. 143, 146). Plaintiff's date last insured for DIB is December 31, 2012. (Tr. 120). Plaintiff alleges disability due to bipolar disorder, obsessive compulsive disorder, post-traumatic stress disorder, obesity, sleep apnea, hernia, disc degeneration, high blood pressure and a heart condition. (Tr. 58).

On December 27, 2007, Plaintiff was admitted to Kent Hospital for complaints of anxiety and suicidal ideation. (Tr. 181-195, 385-388). Upon admission, Plaintiff had intact cranial nerves;

normal motor and sensory response; a normal gait; normal reflexes; a normal back; non-tender extremities with normal range of motion; no attention problems; no memory loss; difficulty concentrating; racing thoughts; a sad and depressed mood; anxiety; problematic judgment; decreased interests; and feelings of hopelessness and worthlessness. (Tr. 183, 187-188, 385). Plaintiff was treated with medication (Tr. 192); discharged on December 31, 2007, with diagnoses of possible bipolar disorder, cocaine abuse, vitamin B-12 deficiency and obesity (Tr. 184); and referred to Roger Williams Medical Center for inpatient psychiatry care. (Tr. 185, 238-241). Upon discharge, Plaintiff was noted as obese, with no neurological deficits; a sad affect; a depressed mood; and no suicidal ideation. (Tr. 184-185, 238-239).

On January 7, 2008, Plaintiff was seen at SSTAR of Rhode Island for complaints of depression and suicidal ideation. (Tr. 225-236). Upon exam, Plaintiff was attentive, with average motor activity; an elated and stable mood; an appropriate, normal, and full affect; congruent thoughts; an expressive tone; spontaneous, organized, goal directed, and normal thoughts; low self-esteem; fair judgment; adequate impulse control; good frustration tolerance; good insight; anxiety; and self-reported suicidal ideation. (Tr. 228-231). Plaintiff was diagnosed with cocaine dependence. (Tr. 232, 234).

On January 23, 2008, Plaintiff was seen at The Kent Center for complaints of mood swings. (Tr. 390-400). Upon exam, Plaintiff was agitated, with motor retardation; an attention problem; memory loss; difficultly concentrating; racing thoughts; a sad and depressed mood; insight problems; and decreased interests. (Tr. 391). Plaintiff was diagnosed with a mood disorder, cocaine dependence, post-traumatic stress disorder, and major depressive disorder (Tr. 398), and referred to treatment at the Providence Center. (Tr. 399).

From January 28, 2008 through March 17, 2010, Plaintiff underwent individual and group counseling at the Providence Center for complaints of cocaine dependence and increased depression. (Tr. 334-362, 365-370, 488-491, 515-519, 525-559, 594). During treatment, Plaintiff was very active, engaged (Tr. 340), and emotionally better (Tr. 516), with normal motor activity; a normal thought process; normal thought content; normal perception; an euthymic affect; normal concentration and attention; intact memory; intact intellectual functioning, insight, and judgment (Tr. 336); improved feelings of self-worth and depression (Tr. 337); feelings of hopefulness; and an improved mood. (Tr. 339).

On May 21, 2008, Dr. Stephen Clifford, a Disability Determination Services ("DDS") psychologist, opined that Plaintiff suffered from non-severe affective, anxiety, and substance addiction disorders. (Tr. 371). On November 26, 2008, Dr. Clifford Gordon, another DDS psychologist, affirmed that opinion. (Tr. 497).

On July 16, 2008, Dr. William Palumbo performed a consultative physical examination of Plaintiff, who complained of morbid obesity, back pain, arthritis and hypertension. (Tr. 447). Upon exam, Plaintiff had the ability to walk into the exam room and maneuver on the exam table without difficultly; a morbidly obese neck and abdomen; edema in the extremities with full and unrestricted range of motion; difficulty flexing at the waist and when attempting to straighten up; pain in the legs when attempting to bend backwards; a somewhat labored gait; a non-focal neurological exam; and normal straight-leg raising tests. (Tr. 448). Plaintiff was diagnosed with back pain, possibly aggravated by his obesity. Id. Dr. Palumbo opined that Plaintiff was unable to walk more than about one or two city blocks at a time. Id.

On July 24, 2008, Dr. Thomas Bennett, a DDS physician, opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for about two hours in an eight-hour workday; sit about six hours in an eight-hour work day; push and pull on an unlimited basis; frequently balance; occasionally stoop, kneel, and climb ramps and stairs; and never crouch, crawl, or climb ladders, ropes or scaffolds. (Tr. 450-451). On October 29, 2008, Dr. Joseph Callaghan, another DDS physician, affirmed that opinion. (Tr. 492).

On July 30, 2008, Plaintiff was seen at Wilcox Health Center for complaints of depression. (Tr. 514). Upon exam, Plaintiff had a supple neck; full range of motion of the right hip; a steady gait; and no edema in the lower extremities. Id. Plaintiff was diagnosed with hypertension; right hip pain; a history of bipolar disorder and depression and obesity. Id.

On November 19, 2008, Dr. James Greer reported that he had treated Plaintiff since July 21, 2008 for bipolar disorder, cocaine dependence and a generalized anxiety disorder. (Tr. 493-496). Dr. Greer opined that Plaintiff was disabled from those impairments, separate and apart from substance abuse, and that he could not sustain competitive employment on a full-time basis. (Tr. 494). Dr. Greer further opined that Plaintiff had numerous moderately severe and severe mental limitations. (Tr. 495-496).

On February 22, 2010, Dr. Greer opined that Plaintiff was disabled, not because of his emotional problems, but because of his substance abuse, and could not sustain competitive employment on a full-time basis. (Tr.560-563). Dr. Greer further opined that Plaintiff had numerous moderately severe mental limitations. (Tr. 562-563).

On April 7, 2020, Ms. Kristen Stewart, a nurse practitioner, opined that Plaintiff was incapable of full-time employment. (Tr. 595-598). Ms. Stewart further opined that Plaintiff could

sit no more than one hour at a time; not stand or walk more than zero to one hour at a time; frequently lift and carry up to five pounds; occasionally lift and carry up to ten pounds; frequently perform simple grasping with both hands; occasionally reach with the left hand and frequently reach with the right hand; never push and pull with the left arms and occasionally push and pull with the right arm; occasionally perform fine manipulation with the left hand and frequently with the right hand; never perform over the shoulder work with the left arm and occasionally with the right arm; occasionally perform operating controls with the legs and feet; occasionally bend; never squat, kneel, or crawl; occasionally be exposed to nosie and vibration; and never be exposed to unprotected heights, moving machinery, extreme temperatures, dust, fumes, and gases. (Tr. 598).

## A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4. At Step 2, the ALJ found that Plaintiff's low back pain, obesity, and, since February 2009, left shoulder tear, were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 10). However, he concluded that Plaintiff's various mental impairments were not "severe." (Tr. 10-12). At Step 3, the ALJ concluded that Plaintiff's impairments did not, singly or in combination, meet or medically equal, any Listings. (Tr. 12-13).

As to RFC, the ALJ found that Plaintiff was capable of performing a range of light work as defined in 20 C.F.R. § 404.1567(b) subject to certain nonexertional, postural restrictions. (Tr. 13). The ALJ did not impose any nonexertional restrictions related to Plaintiff's mental impairments, pain or fatigue. Id. Based on this RFC and testimony from the VE, the ALJ concluded at Step 4 that Plaintiff was not disabled because he was capable of performing his past relevant work as a loan officer. (Tr. 16). Alternatively, at Step 5, the ALJ offered that, even if Plaintiff's RFC was further

restricted by nonexertional restrictions, Plaintiff would be capable of performing other unskilled jobs at the light exertional level which are present in the regional economy. (Tr. 17).

### B. The ALJ's Analysis of Plaintiff's Obesity is Not Supported by Substantial Evidence

In making his RFC assessment, the ALJ adopted the nonexamining opinions of Dr. Bennett (Ex. 12F) and Dr. Callaghan (Ex. 13F) and found them to be "reasonable." (Tr. 15). He also noted that "[e]vidence subsequently submitted does not warrant any change except to add no reaching above shoulder level with left arm status post February 2009 shoulder injury." Id.

Dr. Bennett rendered his physical RFC assessment on July 24, 2008 and noted Plaintiff's primary diagnosis as low back pain and his secondary diagnosis as obesity. (Tr. 449). As to obesity, he noted Plaintiff's weight as 278 pounds. (Tr. 450). The data as to weight came from Dr. Palumbo's consultative examination of Plaintiff completed on July 16, 2008. (Tr. 447). Dr. Palumbo described Plaintiff as morbidly obese and noted that the obesity was "aggravating his problem of lower back pain and bilateral leg pain." (Tr. 448). He also described his opinion that Plaintiff could walk up to two city blocks as "an optimistic guess" because Plaintiff appeared to be in "some discomfort just walking around the clinic area." Id.

Plaintiff argues that the ALJ erred by relying on outdated RFC assessments made by the nonexamining consultants, Dr. Bennett and Dr. Callaghan. The issue centers on Plaintiff's significant weight gain between the time of those assessments in 2008 and the ALJ's decision in 2010, and whether it was reasonable for the ALJ to conclude that such weight gain would not change the opinions of Dr. Bennett and Dr. Callaghan as to Plaintiff's functional capacity.

At the time of Dr. Bennett's RFC assessment in July of 2008, the record indicates that Plaintiff's weight was 278 pounds. (Tr. 447, 450). On April 6, 2010, Plaintiff testified that he

weighed 370 pounds (a 33% gain in approximately nine months). (Tr. 29). The record supports the existence of a substantial weight gain. Plaintiff's weight was recorded at 291 pounds on October 10, 2008 (Tr. 513), at 339 pounds on March 18, 2009 (Tr. 503), and at 348 pounds on September 18, 2009 (Tr. 523). Thus, it is highly plausible that Plaintiff's weight had further increased to 370 pounds as he testified was his current weight on April 6, 2010, and the Commissioner has not disputed Plaintiff's testimony in this regard.

The Commissioner counters by arguing that it was reasonable for the ALJ to assume that Plaintiff's subsequent weight gain would not have changed the opinions of Dr. Bennett and Dr. Callaghan. (Document No. 10 at p. 22). However, the record reflects that the ALJ himself believed that such a weight gain was material and stated, as to the 2008 RFC assessments, that "100 pounds might legitimately change that" and described it as "a heck of a gain." (Tr. 50).

In Alcantara v. Astrue, No. 07-1056, 2007 WL 4328148 (1st Cir. 2007) (per curiam), the First Circuit held that an ALJ erred by relying on the opinion of a nonexamining consultant which was based on an incomplete record. In particular, it found fault with the ALJ's unsupported statement that the record underwent "no material change" after the consultant rendered his opinion when in fact there was evidence of a subsequent material determination in Plaintiff's mental health. Id. at *1. See also Brown v. Barnhart, No. 06-22-B-W, 2006 WL 3519308 at **3-4 (D. Me. Dec. 6, 2006) (finding fault in ALJ's adoption of nonexamining consultant opinions absent "confidence" that subsequent medical evidence would not have changed the opinions). Here, the record reflects that Plaintiff's substantial weight gain was a material change in his condition which calls into question

the continuing validity of the 2008 RFC assessments.[1]  Also, as noted above, the ALJ even recognized in his decision that Plaintiff's weight gain "might legitimately change" those opinions. (Tr. 50).

In Social Security Ruling 02-1p at *2, 2000 WL 628049, the Commissioner noted that the National Institutes of Health Clinical Guidelines recognize three levels of obesity based on BMI – Level 1: 30-34.9 BMI, Level II: 35-39.9 BMI and Level III: 40 BMI and greater.  SSR 02-1p also provides that "Level III, termed 'extreme' obesity...represent[s] the greatest risk for developing obesity-related impairments."  At a weight of 278 pounds, Plaintiff's BMI was 39.9[2] or the top of the Level II category.  However, at his subsequent weight of 370 pounds, Plaintiff's BMI was 53.1 or well into the Level III "extreme" category.  SSR 02-1p recognizes that the "combined effects of obesity with other impairments may be greater than might be expected without obesity."  Here, Dr. Palumbo opined that Plaintiff's obesity was "aggravating his problem of lower back pain and bilateral leg pain" and thus it stands to reason that a ninety-two pound weight gain would further aggravate those conditions.  In addition, the record reflects that Plaintiff has been diagnosed with obstructive sleep apnea which can be exacerbated by weight gain and contribute to fatigue and concentration problems.

Although the ALJ recognized and discussed Plaintiff's substantial weight gain at the hearing (Tr. 49-51), he fails to adequately address the issue in his decision.  Further, the ALJ rejected the

---

[1] Although the Obesity Listing (9.09) was deleted in 1999, an individual of Plaintiff's height (with certain other medical conditions) would meet the "old" listing if he weighed 318 pounds.  See 64 FR 15914 (1999 version of 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 9.09 – Obesity).  Thus, the weight necessary to trigger the "old" obesity listing is forty pounds more than Plaintiff weighed in 2008 when Dr. Bennett rendered his RFC assessment but over fifty pounds less than Plaintiff reportedly weighed in 2010.

[2] Although Dr. Bennett noted Plaintiff's BMI to be 41 at a height of 70 inches and a weight of 278 pounds, that is slightly inaccurate, and the formula actually results in a BMI of 39.9 at 278 pounds.

only medical opinion as to physical RFC in the record which was rendered after the weight gain. On April 7, 2010, Ms. Kristen Stewart, Plaintiff's treating nurse practitioner, opined that Plaintiff was disabled due to left shoulder pain, hypertension ("HTN"), GERD, obesity, low-back pain ("LBP"), bipolar disorder and obstructive sleep apnea ("OSA"), and described Plaintiff's symptoms as including decreased range of motion in left shoulder, pain, weak grasp, depression, anxiety and sleep disturbance. (Tr. 595). She also indicated that Plaintiff's medications would cause sedation and weight gain. (Tr. 596). She reported moderately severe pain and fatigue, and assessed Plaintiff as having a very limited physical RFC. (Tr. 597-598).

The ALJ gave only "limited probative weight" to Ms. Stewart's opinions because they were not supported by the evidence as a whole and were inconsistent with the treatment notes from CCAP. (Tr. 15). However, the treatment notes from CCAP are limited and reflect only six visits after July 2008. (Tr. 502, 504, 506, 513, 520 and 522). Most of these appointments related to Plaintiff's 2009 shoulder injury, and the others were for miscellaneous matters such as a flu shot, bronchitis and a mole. Id. However, all of the CCAP notes refer to Plaintiff's chronic obesity and contain at least one reference of the need to lose weight. (Tr. 524). The ALJ did not specifically identify those portions of the CCAP treatment notes contradicted by Ms. Stewart's opinions and, as noted, most of the CCAP visits were for specific medical issues and were not intended to be full medical work-ups. Thus, the contradictions are not readily apparent. In addition, it is undisputed that Ms. Stewart treated Plaintiff during the period of his substantial weight gain and thus she was in the best position to evaluate the impact of that weight gain on his overall functional capacity.

Here, the totality of the circumstances warrants remand. First, the ALJ relied upon the opinions of nonexamining consultants rendered in 2008 who reviewed the record nearly two years

prior to the ALJ's decision and, more significantly, prior to Plaintiff's substantial weight gain as of April 2010. Second, the ALJ recognized this issue and the materiality of the weight gain but fails to address the issue in his decision. Third, the ALJ rejected the only medical opinion (from a treating source) as to RFC rendered after the weight gain and thus the ALJ implicitly concludes that the weight gain would not have changed the 2008 opinions. However, there is no medical evidence supporting that conclusion and thus the ALJ effectively substituted his own lay judgment for medical opinion on this issue.

While the ALJ was not obligated to accept Ms. Stewart's opinions, his comments at the April 6, 2010 hearing clearly show that he recognized the need for further medical evidence on the issue and gave Plaintiff's counsel ten days to submit an updated RFC. (Tr. 49). Plaintiff's counsel obtained an RFC assessment from Ms. Stewart, a treating source, on April 7, 2010 and submitted it to the ALJ for consideration. (Ex. 28F). Once the ALJ rejected that RFC assessment, he was still faced with a lack of medical evidence on the issue of whether or not Plaintiff's nearly 100-pound weight gain since 2008 negatively impacted his RFC. Under those circumstances, the ALJ should have taken other steps to develop the record with medical evidence on that issue. His failure to do so resulted in him inappropriately substituting his own judgment for medical opinion and thus his RFC assessment on this record is not supported by substantial evidence, and a remand for further development of the record and consideration of the impact of Plaintiff's morbid obesity on his functional capacity is warranted.[3]

---

[3] Plaintiff also takes issue with the ALJ's Step 2 decision that his mental impairments were not "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). Since I conclude that Plaintiff's arguments regarding consideration of his obesity are valid and plainly warrant remand, there is no need to fully consider Plaintiff's alternative argument. However, I do note that the ALJ's Step 2 decision is directly supported by the opinions of Dr. Clifford and Dr. Gordon (Exs. 9F and 17F) and the ALJ accurately noted that the record reflected continued improvement in Plaintiff's mental condition thereafter. (Tr. 16).

## VI.     CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be DENIED and that Plaintiff's Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be GRANTED.  Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this case for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 29, 2011